UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HISHAM A. KHALEEL,

Plaintiff,

V.

SECURITAS SECURITY SERVICES USA, INC., SEIU/LOCAL 32BJ UNION and THE NEW YORK CITY DEPARTMENT OF TRANSPORTATION,

Defendants.

**OPINION AND ORDER**

25-cv-742 (ER)

Ramos, D.J.:

Hisham A. Khaleel filed this action against Securitas Security Services USA Inc. ("Securitas"), SEIU/Local 32 BJ Union (the "Union"), and the New York City Department of Transportation ("DOT") (collectively "Defendants") on January 24, 2025, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., the Age Discrimination Employment Act of 1967, the Equal Pay Act, 29 U.S.C. § 206(d), the Americans with Disabilities Act (ADA), the Family Medical Leave Act, and Articles 7 and 8 of the National Labor Relations Act. Doc. 1. Pending before the Court are motions filed by the Union and the DOT to dismiss the complaint pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6). Docs. 40 and 51. For the reasons set for below, the motions are GRANTED.

**STATEMENT OF FACTS**[1]

Khaleel is a white 52-year-old Muslim man of Egyptian descent. Doc. 1 at 16. He is a veteran of the Egyptian Army and suffers from high blood pressure and "joint problems." *Id.* From May 22, 2018, through at least September 18, 2022,[2] Khaleel was employed as a security guard for Securitas, assigned to a security booth at a DOT facility. *Id.* According to Khaleel, the DOT allowed Securitas guards to keep microwave ovens, coolers and other personal items in the security booths because the DOT did not have lockers or other facilities for storage of personal items. Doc. 1 at 18. Khaleel alleges that on September 13, 2022, site supervisor Brandon Lewis, "harassing" him, directed him to remove his microwave, cooler, etc. from the booth by September 20, 2022. Khaleel told Lewis that other DOT facilities allowed for the storage of such items in security booths, but Lewis "refus[ed] to hear [him]. *Id.* Khaleel then spoke to DOT site chief Fevrin Agenord and asked for a written authorization to allow him to keep his items in the booth; Agenord "respectfully did [him] that favor." *Id.* However, on September 18, 2022, Lewis "eagerly and aggressively" retaliated by issuing him two "frivolous, meritless writ[e]-ups" that Khaleel refused to sign. *Id.* In further retaliation, Lewis suspended Khaleel by taking him off the schedule, and together with District Manager Brian Wiggins, "rop[ed]" the DOT's top management to void the authorization letter Agenord had given him, to "cover up their discrimination," as he had been denied booth privileges that others were granted. *Id.*

On September 23, 2022, Khaleel filed a form complaint with NYSDHR, which sets forth the events described above, and alleges discrimination on the basis of his age, military status,

---

[1] The facts are taken from the well-plead allegations in the Complaint, Doc. 1, which the court accepts as true for purposes of this opinion. *Koch v. Christie's International PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

[2] Khaleel attaches to his Complaint the complaint he filed with the New York State Division of Human Rights ("NYSDHR"), in which he indicated that at that time, September 23, 2022, he did not know whether he had been fired. Doc. 1 at 16.

marital status as a single man, disability, sexual orientation as a heterosexual man, sex, and race as a white-non-Hispanic, "Arab Middle Eastern man." *Id.* at 16. In the NYSDHR complaint, he further alleges that he had been subjected to "serial actions of discrimination and harassment" by supervisors other than Lewis and Wiggins. *Id.* at 18. He also alleges that he was denied prayer breaks, time off for religious holidays such as Eid and Ramadan, and had a medical appointment "sabatog[ed]." *Id.* at 17. In the section of the NYSDHR complaint labeled "Were other people treated better than you?" Khaleel states that employees at other sites were treated better because they were allowed to keep microwaves and fridges, and were "non-Arabic and non-Muslim," mostly "African American, Latino White and Asians." *Id.* at 21. Khaleel also states that he had also filed a complaint with OSHA about "HAZMAT"[3] at the site.

Although the documents attached to his complaint are not clearly labeled, it appears that on November 10, 2023, the NYSDHR advised him that a "no probable cause determination" had been reached in connection with his complaint and that he had failed to appeal that determination within the required 60 days. *Id.* at 28. Accordingly, he was notified that he could only seek relief from that determination exclusively in state court. *Id.*

Khaleel then apparently appealed to the Equal Employment Opportunity Commission ("EEOC"), including about the NYSDHR's determination on November 23, 2023. *Id.* at 35-42. Khaleel received a right to sue letter from the Equal Employment Opportunity Commission ("EEOC") on October 21, 2024. *Id.* at 9. The letter advised that if he wished to file a lawsuit based on his complaint, the lawsuit must be filed within 90 days of receipt of the letter (by January 19, 2025). *Id.*

---

[3] The Court assumes this refers to a complaint he purportedly filed with the federal Occupational Safety and Health Administration about hazardous materials at the site. Khaleel provides no further information about those materials.

The instant complaint was filed on January 24, 2025, five days after the expiration of the 90-day period within which he was required to file the complaint.

Khaleel separately pursued a grievance with the Union concerning his suspension on September 21, 2022.[4] More than one year later, on January 23, 2024, the Union sent Khaleel a letter informing him that that after careful review, it had determined that the grievance "lack[ed] sufficient merit for the Union to be likely to prevail in arbitration." Doc. 41-2 at 2. The January 23 letter also provided Khaleel with information on how to appeal the Union's determination. *Id.* Khaleel appealed, and by letter dated December 6, 2024, the Union advised that the "Local 32BJ Joint Executive Board adopted the recommendation of the Grievance Appeal Board" denying the appeal for lack of sufficient merit. Doc. 1 at 14.

## LEGAL STANDARDS

### *A. Motion to Dismiss Pursuant to Rule 12(b)(6)*

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor. *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). However, this requirement does not apply to legal conclusions, bare assertions, or conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 555 (2007)). To satisfy the pleading standard under Fed. R. Civ. P. 8, a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action,

[4] The "Member Complaint Summary" filed by Khaleel is attached as an exhibit to the Declaration of Berto Elysee, counsel for the Union. Doc. 41-1 at 2. While Khaleel does not include the Complaint Summary in his submissions, the Court may consider it, along with the other grievance documents, because Khaleel relied on the documents in drafting his complaint. *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d. Cir. 2002).

supported by mere conclusory statements do not suffice." *Id*. Accoridngly, a plaintiff is required to support her claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

**B. *Pro Se* Plaintiff**

In the case of a *pro se* plaintiff, the Court is obligated to construe the complaint liberally, *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011), and to interpret the claims as raising the strongest arguments that they suggest. *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citations omitted); *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citing Harris v. City of New York, 607 F.3d 18, 24 (2d Cir. 2010)). The obligation to read a *pro se* litigant's pleadings leniently "apply with particular force when a plaintiff's civil rights are at issue." *Jackson v. NYS Department of Labor*, 709 F.Supp.2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). "However, even *pro se* plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Id.* (quoting *Twombly,* 550 U.S. at 555).

## **DISCUSSION**[5]

### ***A. Khaleel's Title VII, ADA and ADEA Claims are Time Barred.***

Plaintiff's Title VII, ADA and ADEA claims are time barred, but only barely. Title VII requires a plaintiff alleging discrimination to file a charge with the EEOC before filing an action in federal court. *See Moore v. City of New York*, No. 08 Civ. 8879 (PGG), 2010 WL 742981, at *7 (S.D.N.Y. Mar. 2, 2010); *Kubicek v. Westchester County.*, No. 08 Civ. 372 (KMK), 2009 WL 3720155, at *4 (S.D.N.Y. Oct. 8, 2009). "Under Title VII, a claim must be filed in federal court within 90 days of the plaintiff's receipt of a right-to-sue letter from the EEOC." *Rivera v. Child.'s & Women's Physicians of Westchester, LLP*, No. 16 Civ. 714 (PGG) (DF), 2017 WL 1065490, at *8 (S.D.N.Y. Mar. 18, 2017) (citing 42 U.S.C. § 200e-5(f)(1)). "[The 90-day] requirement should be strictly enforced and not extended 'by even one day.'" *Holmes v. NBC/GE*, 914 F. Supp. 1040, 1042 (S.D.N.Y. 1996) (quoting *Johnson v. A1 Tech Specialties Steel Corp*., 731 F.2d 143, 146 (2d Cir. 1984)); see *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 38 (2d Cir. 2011) (finding Title VII claim filed 93 days after receipt of right-to-sue notice was untimely); *Rivera,* 2017 WL 1065490, at *10 (finding Title VII claim filed 92 days after receipt of right-to-sue notice was untimely). "Although *pro se* plaintiffs are entitled to leniency in other areas of litigation, the case law is clear: The 90-day deadline is strictly enforced against represented and *pro se* plaintiffs alike." *Perez v. Mason Tenders Dist. Council Tr. Funds*, No. 17 Civ. 1022 (PAE)

---

[5] To the extent Khaleel continues to assert in his response, Doc. 75, that the Court should have entered default judgments against the DOT and the Union because they failed to answer the complaint in the first instance, he is incorrect. As the Union provides, prior to the time it was required to answer, it filed a premotion letter requesting leave to file a motion to dismiss. Doc. 8. It was filed pursuant to Section 2(A)(ii) of the Court's individual rules. Accordingly, the Union did not fail to respond, and the premotion letter is reason to deny the request to enter default. *See Dantzig v. County of Westchester*, No. 19-cv-8811 (NSR) 2021 WL 1030655. Similarly, the DOT initially requested an extension prior to the expiration of its time to respond, Doc. 15, which was granted. Minute entry Doc. 16. The DOT then filed its premotion letter prior to the time it was required to respond to the complaint. Doc. 18. For the foregoing reasons, neither party was in default and the Court did not show bias against Khaleel in favor of the Union or the DOT by refusing to enter default judgments against them.

(AJP), 2017 WL 5125542, at *3 (S.D.N.Y. Nov. 1, 2017) (collecting cases in which Title VII claims were dismissed as untimely for being filed just a few days late), *aff'd,* 742 F. App'x 584 (2d Cir. 2018). This limitation applies to ADA and ADEA claims as well. *Yajaira Bezares C. v. Donna Karan Co. Store LLC*, Index No. 13 Civ. 8560 (JGK); 13 Civ. 9123 (JGK), 2014 U.S. Dist. LEXIS 70652, * 8-9 (S.D.N.Y. May 21, 2014) (ADEA) (ADA).

Here, the right to sue letter was dated October 21, 2024. Khaleel was therefore required to file his complaint by January 19, 2025.[6] However, the complaint was not filed until January 24, 2025, so the complaint was filed late even taking into consideration the presumption of receipt after three days.[7] *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 148 n. 1 (citing Fed.R.Civ.P. 6(e) ("Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon the party and the notice or paper is served upon the party by mail, [three] days shall be added to the prescribed period.")). And normally it may be assumed, in the absence of challenge, that a notice provided by a government agency has been mailed on the date shown on the notice. *See Id.* Accordingly, the Title VII, ADEA and ADA claims may be dismissed on this basis alone.[8]

---

[6] Or, at the latest January 20, 2025, because January 19 was a Sunday.

[7] The Court notes that while the complaint indicates that it was signed on January 17, 2025, Doc. 1 at 7, the receipt for the payment of the $405 fee paid upon filing, which is attached as an exhibit to the complaint, is dated January 24, 2025, 4:23 p.m. *Id.* at 1-1. The receipt is therefore proof that the complaint was filed on January 24, 2025.

[8] While it is not clear whether Khaleel attempts to assert a claim of discrimination pursuant to Section 8-502(a) of the New York City Human Rights Law ("NYCHRL"), he is statutorily barred from doing so. Section 8-502(a) of the NYCHRL provides that a plaintiff who has a CHRL discrimination claim can file a case in court "unless such person has filed a complaint with the city commission on human rights or with the state division of human rights with respect to [the] alleged unlawful discriminatory practice." See NYC Administrative Code 8-502 (a). Once a claim is brought under the NYCHRL before the NYSDHR, it "can't be brought again as a plenary action in another court." *See Jackson v. New York City Transit Authority*, No. 19-CV-5351 (VSB), 2022 U.S. Dist. LEXIS 8210, at * 7 (S.D.N.Y. Jan. 14, 2022) (internal citations omitted). This extends beyond just the identical claims to encompass claims "arising out of the same incident on which [the NYSDHR] complaint was based." *Alvarado v. Mount Pleasant Cottage School District*., 404 F. Supp.3d 763, 789 (S.D.N.Y. 2019). Where a plaintiff had "elected her

### B. *In any event, Khaleel fails to state a claim for Title VII, the ADA and the ADEA.*

To establish a prima facie case of discrimination under Title VII, Khaleel must establish that: "(1) he was a member of a protected class; (2) he was competent to perform the job in question, or was performing the job duties satisfactorily; (3) he suffered a materially adverse employment action; and (4) the action occurred under circumstances that give rise to an inference of discrimination." See *Mondelo v. Quinn, Emanuel, Urquhart & Sullivan, LLP*, No. 21 Civ 02512 (CM), 2022 U.S. Dist. LEXIS 31075, at *28 (S.D.N.Y. Feb. 22, 2022). A protected class is defined by Title VII as discrimination based on an "individual's race, color, religion, sex, or national origin*." See* 42 USCS § 2000e-2(a)(1). Here, there is no question that Khaleel is a member of a protected class. Nor is there a dispute he suffered a materially adverse employment action in that he was terminated. However, when alleging a claim under Title VII, a plaintiff must do more. He must come forward with non-conclusory allegations concerning events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of discriminatory intent. *See Marshall-Screen v. IRS*, No. 01-CV-0811 (FB), 2002 U.S. Dist. LEXIS 4224 at *9-*10 (E.D.N.Y. Feb. 26, 2002) (internal citations omitted). A complaint consisting of nothing more than naked assertions and setting forth no facts upon which a court could find a violation of Title VII fails to state a claim under Rule 12(b)(6)." *Id.*

Khaleel's primary complaint is that he, unlike other employees at other sites, was not allowed to keep a microwave and refrigerator in his security booth and was ultimately fired for his refusal to do so. But he does not put forth non-conclusory facts suggesting that his firing occurred due to a discriminatory animus. Nor, as the DOT points out, does the fact that he

---

remedies under the New York City Human Rights Law, [she] may not now bring suit in this Court under the same statute." See *Shahid v. New York City Health & Hospitals. Corporation*, No. 03 Civ. 8413 (HB), 2004 U.S. Dist. LEXIS 25263, *11 (S.D.N.Y. Dec. 14, 2004).

received negative write-ups suggest that he was a victim of discrimination, as negative write-ups, without material alteration of his working conditions, do not constitute an actionable employment action. *Banks v. McGlynn, Hayes & Co*., 21 CIV 6679 (JLR) (RWL), 2024 WL 689145 (S.D.N.Y. Feb. 20, 2024).

In alleging a violation of the ADA, a plaintiff must demonstrate that: "(1) [the] plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the ADA had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer had refused to make such accommodations." *See Rhoda v. Cent. Hudson Gas & Elec. Corp*., No. 22 Civ. 8135 (NSR), 2024 U.S. Dist. LEXIS 48465 at *15-*16 (S.D.N.Y. Mar. 16, 2024) (internal citations omitted). Here, Khaleel claims that his disabilities are high blood pressure and "joint problems," which is caused by standing for long hours. Doc. 1 at 16. However, he alleges no accommodation which he requested and was denied. Indeed, he does not allege that he informed his employer of any disability at any time. The only health related inconvenience he mentions, is that he had a medical appointment that was "sabotaged." *Id*. at 17. Based on these facts, the ADA claim cannot survive.

Finally, to establish a claim under the ADEA, a plaintiff must show: (1) that he was within the protected age group, (2) that he was qualified for the position, (3) that he experienced an adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *See Ndremizara v. Swiss Re Am. Holding Corp.*, 93 F.Supp.3d 301, 316-317 (S.D.N.Y. 2015). Khaleel is in the protected age group because he is "at least 40 years of age." *See* 29 U.S.C. § 631(a).

A plaintiff asserting an ADEA claim must allege that "age was the reason that the employer decided to act." *See Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 303 (S.D.N.Y. 2021). Where a plaintiff fails to allege sufficient factual detail that the reason for the adverse employment action was due to his age, the claim is unable to survive a motion to dismiss. *See Chui v. Publicis Groupe S.A.*, No. 24 Civ. 6767 (AT), 2025 U.S. Dist. LEXIS 187071, at *10 (S.D.N.Y. Sept. 23, 2025).

Here, Khaleel has completely failed to show that his termination was due to any inference of age animus. As set forth above, he alleges that his termination was triggered by his refusal to remove items from his booth after he was instructed to remove them. And he does not suggest that any comments were made evidencing discrimination on the basis of his age differently than similarly situated younger employees who also refused to follow instructions to remove such items. Accordingly, he fails to show discriminatory intent. *See Malatesta v. Credit Lyonnais,* No. 03 Civ. 3690 (MBM), 2005 U.S. Dist. LEXIS 30334, at *19 (S.D.N.Y. Nov. 21, 2005). The ADEA claim must also fail.

### *C. Khaleel fails to state a claim of retaliation.*

Khaleel alleges that he complained about the mistreatment he experienced to the human resources department at Securitas by leaving multiple voicemail messages and sending emails, and that he also filed a complaint with OSHA. Doc. 1 at 21. As a result, he says that he felt retaliated against. *Id*. He also indicates that he was asserting retaliation in the NYSDHR complaint as a "safety precaution" because he hadn't yet gotten a response to his complaints. *Id.* In fact, at the time he filed the complaint with the NYSDHR on September 23, 2022, he states that he still did not know if he had been laid off or terminated. *Id*.

To state a claim of retaliation under Title VII, the ADA or the ADEA, a plaintiff must show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." See *King v. N.Y.C. Department of Education*, No. 23-CV-7622 (ER), 2025 U.S. Dist. LEXIS 141642, at *31 (S.D.N.Y. Jul. 24, 2025).

Protected activity is an "action taken to protest or oppose statutorily prohibited discrimination." *See Stapleton v. N.Y.C. Department of Education*., No. 22-CV-9351 (JAV) (SDA), 2025 U.S. Dist. LEXIS 192958, at *7 (S.D.N.Y. Sep. 30, 2025). A causal connection is established either indirectly, by evidence that the protected activity was followed closely by discriminatory treatment, or directly, by evidence of retaliatory animus directed against the plaintiff by the defendant. *See King*, 2025 U.S. Dist. LEXIS 141642, at *31. Where a plaintiff is unable to adequately plead a causal connection, his retaliation claims under Title VII, ADEA and ADA will be dismissed. *See Moore v. Verizon*, No. 13-CV-6467 (RJS), 2016 U.S. Dist. LEXIS 16201, at *45 (S.D.N.Y. Feb. 5, 2016).

Here, Khaleel's retaliation claim is based on purported voicemails and email messages that he sent to Securitas' human resources department, and a complaint he made to OSHA about hazardous materials at his work site. His claim fails, in the first instance, because he does not allege the substance of his complaints to Securitas. And as noted above, the protected activity to which the retaliation relates must concern statutorily prohibited discrimination. And we do not know, based on his complaint, what he told Securitas. His retaliation claim on the basis of his complaint to OSHA fails for substantially the same reason: it does not concern statutorily prohibited discrimination. His retaliation claim concerning OSHA also fails for a second reason:

he does not allege that he told the Defendants about his complaint to OSHA, or that the Defendants otherwise knew about the complaint.

***D. Khaleel fails to state an FMLA claim.***

Khaleel indicates in the complaint that he is alleging a violation of the FMLA. However, he provides no basis for the claim. In order to state an interference claim under FMLA, a plaintiff has to show (1) that he is an eligible employee under the FMLA; (2) that the defendant is an employer as defined in the FMLA; (3) that he was entitled to leave under the FMLA; (4) that he gave notice to the defendant of his intention to take leave; and (5) that he was denied benefits to which he was entitled under the FMLA. *See Smith v. Westchester County*, 769 F. Supp. 2d 448, 465 (S.D.N.Y 2011).

Even assuming that Khaleel is an eligible employee and that Securitas (or the DOT) is an employer as defined under the Act—which he nowhere alleges[9]—he does not allege that he had requested FMLA leave, that Securitas (or the DOT) interfered with his right to take FMLA leave, or that Securitas (or the DOT) retaliated against him because he sought FMLA leave. He merely asserts, in conclusory manner, that a medical appointment was "sabotaged." Doc. 1 at 17. The FMLA claim must be dismissed.

E. ***Khaleel fails to state an EPA claim.***

The federal Equal Pay Act provides that "[n]o employer ... shall discriminate ... between employees on the basis of sex." 29 U.S.C. § 206(d)(1). To state a claim under the EPA, a plaintiff must allege that: "(1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and

[9] His failure to allege these facts is fatal to his FMLA claim on their own. Eligibility is a threshold issue, and it is insufficient for a plaintiff to "merely assert[ ] in a conclusory manner that he is eligible without stating any facts that relate to the definition of an eligible employee." *Spurlock v. NYNEX*, 949 F. Supp. 1022, 1033 (W.D.N.Y.1996).

responsibility; and (3) the jobs are performed under similar working conditions." *Lehman v. Bergmann Associates, Inc*., 11 F.Supp.3d 408, 420 (W.D.N.Y. 2014) (quoting *Klein v. New York University.*, No. 07 Civ. 160, 2008 WL 3843514, at *3 (S.D.N.Y. Aug. 14, 2008). Although the plaintiff need not establish a prima facie case at the pleading stage, these elements "provide an outline of what is necessary to render a plaintiff's employment discrimination claims for relief plausible." *Kassman v. KPMG LLP,* 925 F.Supp.2d 453, 461 (S.D.N.Y.2013).

Here, Khaleel's claim must fail because, although he alleges that two women (Persaud and Loretta) were treated differently than him, Doc. 1 at 21, he makes no allegations regarding their respective duties or responsibilities, or the conditions under which they worked. Nor, importantly, does he allege that the two women were paid more than him. On these facts, the EPA claim cannot stand.

***F. Khaleel does not state an NLRA claim.***

Finally, Khaleel alleges that his Union failed to represent him fairly. A union "has a duty to represent fairly all employees subject to the collective bargaining agreement." *Spellacy v. Airline Pilots Association-International*, 156 F.3d 120, 126 (2d Cir. 1998) (citing *Air Line Pilots Association, International v. O'Neill*, 499 U.S. 65, 74 (1991)). This duty of fair representation "extends to both the negotiation of a collective bargaining agreement, and its enforcement and administration." *Id.* (internal citations omitted).

Courts in this District have characterized a plaintiff's obligation to plead sufficient conduct to support a claim for breach of the duty of fair representation as imposing an "enormous burden." *Dennis v. Local 804*, No. 07 Civ. 9754 (HB), 2009 WL 1473484, at *5 (S.D.N.Y. May 27, 2009). Indeed, "[a]ny substantive examination of a union's performance, therefore, must be highly deferential, recognizing the wide latitude that [unions] need for the effective performance of their bargaining responsibilities." *O'Neill*, 499 U.S. at 78.

To state a claim for breach of the duty of fair representation, a plaintiff must establish two elements. First, a plaintiff must show that the unions actions or inactions were "either arbitrary, discriminatory, or in bad faith." *Vaugh v. Air Line Pilots Association, International*, 604 F.3d 703, 709 (2d Cir. 2010) (internal quotations omitted) (quoting *O'Neill*, 499 U.S. at 67). Second, a plaintiff must demonstrate "a causal connection between the union's wrongful conduct and their injuries." *White v. White Rose Food, a Division of DiGiorgio Corp.*, 237 F.3d 174, 179 (2d Cir. 2001) (quoting *Spellacy*, 156 F.3d at 126).

A union's actions "are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." *O'Neill*, 499 U.S. at 67 (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)). "This 'wide range of reasonableness' gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong." *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 45–46 (1998).

A union's actions "are discriminatory when 'substantial evidence' indicates that it engaged in discrimination that was 'intentional, severe, and unrelated to legitimate union objectives.'" *Vaughn*, 604 F.3d at 709 (quoting *Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America v. Lockridge*, 403 U.S. 274, 301 (1971)).

A union acts "in bad faith when it acts with an improper intent, purpose, or motive." *Spellacy*, 156 F.3d at 126. "Bad faith encompasses fraud, dishonesty, and other intentionally misleading conduct." *Id.*

Here, Khaleel simply fails to present any facts that show that the Union failed in its duty to provide him with fair representation, much less that its decision not to pursue his grievance in arbitration was arbitrary or capricious, or in bad faith. He simply states, in conclusory fashion, that the Union was helping to "cover up" Securitas' discriminatory actions. Doc. 1 at 4-5. This allegation does not suffice to meet the "enormous burden" he had to carry to support a claim for breach of the duty of fair representation. *Dennis v. Local 804*, 2009 WL 1473484, at *5.

To the extent the NLRA claim is also asserted against the DOT it is similarly dismissed as the DOT is not a union.

***G. Leave to amend.***

As a general rule, leave to amend should be freely given. *Jin v. Metropolitan Life Insurance Co.*, 310 F.3d 84, 101 (2d Cir. 2002); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires"). It is "within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). A court may deny leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009).

The Court grants Khaleel leave to amend in part. As to Khaleel's breach of the duty of fair representation claim against the Union, the Court cannot conclude at this stage that amendment would be futile. As indicated, he provides no facts in the complaint that the Union acted unfairly or in contravention of the collective bargaining agreement. Subject to any defense that the Union may deem appropriate to interpose, Khaleel will be provided with an opportunity to amend his NLRA claim.

. As to Khaleel's discrimination and retaliation claims, however, amendment would be futile. As noted above, the claims are time-barred because they were filed more than 90 days after receiving the right to sue letter.

Accordingly, Khan is granted leave to amend the complaint in part.

**CONCLUSION**

For the reasons set forth above, the motions to dismiss are granted. If Khaleel wishes to amend the NLRA claims against the Union, he must do so by October 21, 2026. If he does not do so, the claim will be dismissed with prejudice. The Clerk of Court is respectfully directed to terminate the motions, Docs. 40 and 51.

It is SO ORDERED.

Dated: September 30, 2026
New York, New York

Edgardo Ramos, U.S.D.J.